IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEVELOPERS SURETY AND INDEMNITY
COMPANY,

        Plaintiff,

                                   3:15-CV-1936-PK

v.                                    OPINION AND
                                     ORDER

FORESTRY DEVELOPMENT, INC., JOHN
CHILDS, and CHAUNCEY CHILDS,

        Defendants.

PAPAK, Magistrate Judge:

       Plaintiff Developers Surety and Indemnity Company ("Developers") brought this declaratory judgment action against defendants Forestry Development, Inc. ("Forestry"), John Childs ("John") and Chauncey Childs ("Chauncey" and, collectively with John, the "Childs") on October 13, 2015. Developers is Forestry's insurer; Forestry is a general contractor; the Childs are clients of Forestry currently prosecuting a lawsuit against Forestry in the circuit court for Clackamas County (the "underlying action") alleging Forestry's liability for negligent construction, negligence *per se*, breach of contract, and fraud. By and through the underlying

Page 1 - OPINION AND ORDER

action, the Childs seek $3 million in damages from Forestry in connection with their negligence and breach claims and $1 million in damages from Forestry in connection with their fraud claim. Developers is currently undertaking Forestry's defense against the Childs' claims in the underlying action, as it is required to do under its insurance policy issued to Forestry. By and through this action, Developers seeks this court's declaration that Developers will not owe Forestry any duty of indemnification in connection with any damage award the Childs might obtain against it in the underlying action. Because Developers is an Iowa corporation headquartered in California, Forestry is an Oregon corporation headquartered in Oregon, and the Childs are citizens of Oregon, this court has diversity jurisdiction over Developers' claim pursuant to 28 U.S.C. § 1332 based on the complete diversity of the parties and the amount in controversy.[1]

Now before the court is Forestry's motion (#11) to stay these proceedings pending the outcome of the underlying action, in which the Childs join. I have considered Forestry's motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Forestry's motion is granted, and these proceedings are stayed pending resolution of the underlying action.

## LEGAL STANDARD

"District courts have inherent authority to stay proceedings before them. . . ." *Gates v. Woodford (Rohan ex rel. Gates)*, 334 F.3d 803, 817 (9th Cir. 2003), *citing Landis v. North Am.*

---

[1] Although this is an action for declaratory judgment, it appears relatively clear that Developers' potential indemnity obligation to Forestry – up to $3 million – which is at stake in this action, should count toward the jurisdictional minimum. *See, e.g., Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006) (collecting cases).

Page 2 - OPINION AND ORDER

*Co.*, 299 U.S. 248, 254 (1936). Indeed, the Supreme Court has stated that the courts' inherent discretion to stay proceedings is an important tool in the promotion of judicial economy:

> The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis*, 299 U.S. at 254-55. Whether or not to grant a party's motion for stay of proceedings is within the discretion of the district court. *See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

## FACTUAL BACKGROUND[2]

Developers issued Forestry a series of commercial general liability insurance policies with respective effective periods of June 23, 2009, to June 23, 2010, of June 23, 2010, to June 23, 2011, and of June 23, 2011, to June 23, 2012 (the "policies"). *See* Complaint, Exhs. 1-3. The three policies, as amended by an endorsement bearing ID No. 00 02 08 08, appear to have identical material provisions. *See id.* Pursuant to the policies, Developers agreed as follows:

> [Developers] will pay those sums that the insured [*i.e.*, Forestry] becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Developers] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Developers] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policies, Section I(1)(a). Expressly excluded from "property damage" coverage under the policies are, in material or potentially material part, the following:

> "Property damage" to:

---

[2] The following recitation constitutes my construal of the parties' allegations and of the evidentiary record for purposes of the motion now before the court only.

Page 3 - OPINION AND ORDER

  (5) That particular part of real property on which [Forestry] or any contractors or subcontractors working directly or indirectly on [Forestry's] behalf are performing operations, if the "property damage" arises out of those operations; or

  (6) That particular part of any property that must be restored, repaired or replaced because "[Forestry's] work" was incorrectly performed on it.

Policies, Section I(2)(j); the parties refer to these two provisions respectively as the "j(5) exclusion" and the "j(6) exclusion." The Section I(2)(j)(6) exclusion is expressly inapplicable to "'property damage' included in the 'products-completed operations hazard,'" Policies, Section I(2)(j), which is defined in relevant part as property damage:

> occurring away from premises [Forestry] own[s] or rent[s] and arising out of [Forestry's work or operations, or work or operations performed on Forestry's behalf, including materials, parts, or equipment furnished in connection with such work or operations] except:
>
>   (1) Products that are still in [Forestry's] physical possession; or
>
>   (2) Work that has not yet been completed or abandoned. However, [Forestry's work or operations] will be deemed completed at the earliest of the following times:
>
>     (a) When all of the work called for in [Forestry's] contract has been completed.
>
>     \* \* \*
>
>     (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Policies, Section V(16)(a). Thus, under the j(5) exclusion, there is no coverage for property damage to any "particular part" of real property on which Forestry's work is *ongoing* at the time

Page 4 - OPINION AND ORDER

the damage occurs, if the damage is caused by Forestry's work, while under the j(6) exclusion there is no coverage for property damage to any "particular part" of real property upon which Forestry worked where the damage is the consequence of Forestry performing its work "incorrectly," unless the real property at issue belongs to someone other than Forestry and Forestry's work on it is complete. *See* Policies, Section I(2)(j)(5), Section I(2)(j)(6), Section V(16).

> For purposes of the policies, "property damage" is defined as:
>
> a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policies, Section V(17).

According to the Childs' allegations made by and through their complaint in the underlying action, in May 2010 the Childs entered into a contract with Forestry pursuant to which Forestry agreed to construct a residence for them on property they owned in Oregon City, Oregon. *See* Declaration of W. Blake Mikkelsen ("Mikkelsen Decl."), Exh. 1 ("Childs' Complaint"). The residence was intended to include both an attached pool house and a detached garage structure. *See* Declaration of Travis J. Veenker ("Veenker Decl."), ¶ 3. The Childs directly hired a contractor other than Forestry to fabricate and install sheet metal at the residence, and that contractor was responsible for most metal work performed in connection with the construction project. *See id.*, ¶ 4.

In October 2010, John ordered Forestry to stop work on the project because the Childs

Page 5 - OPINION AND ORDER

had run out of money to finance its operations. *See id.*, ¶ 5. In May 2011, John advised Forestry that it had secured additional financing and requested that work on the project resume. *See id.* The Childs subsequently ordered Forestry to stop work on the project from December 2011 through April 2012 while the Childs considered alternative designs for aspects of the construction. *See id.*

In May 2012, after work resumed on the project for a second time, Forestry substantially completed the detached garage structure. *See id.*, ¶ 3. Thereafter the Childs began using the garage to store an antique automobile. *See id.* Developers alleges that "[a]round April 2014, before the Project was complete, the Childs terminated Forestry, and subsequently[] hired a different general contractor to complete the Project." Complaint, ¶ 8.

In approximately October 2014, the Childs sent Forestry a "Notice of Defects" listing some 17 classes of construction defects in the residence for which they asserted Forestry's responsibility. Childs' Complaint, ¶¶ 7-9. The defects alleged were as follows: (i) "the exterior stucco finish was installed improperly" with resulting "water intrusion and continuous and progressive property damage," (ii) "the exterior stone veneer finish was installed improperly" with resulting "water intrusion and continuous and progressive property damage," (iii) "numerous windows and skylights were installed improperly" with resulting "water intrusion and continuous and progressive property damage," (iv) "numerous doors were installed improperly" with resulting "water intrusion and continuous and progressive property damage," (v) "the roofing materials was [*sic*] installed improperly" with resulting "water intrusion and continuous and progressive property damage," (vi) "the elevated balconies and covered entry decks were installed improperly" with resulting "water intrusion and continuous and progressive property

Page 6 - OPINION AND ORDER

damage," (vii) "the exterior waterproof decks were installed improperly" with resulting "water intrusion and continuous and progressive property damage," (viii) "the foundation drainage was improperly built" with resulting "water intrusion and continuous and progressive property damage," (ix) "the crawls [*sic*] spaces were improperly built" with resulting "water intrusion and continuous and progressive property damage," (x) "the cathedral ceilings were improperly built" with resulting "water intrusion and continuous and progressive property damage," (xi) "the roof, attic and skylights were improperly built" with resulting "continuous and progressive property damage," (xii) "the fire sprinkler system was installed improperly" with resulting "continuous and progressive property damage," (xiii) "numerous exposed beams were installed improperly" with resulting "continuous and progressive property damage," (xiv) "mechanical equipment and systems were installed improperly" with resulting "continuous and progressive property damage," (xv) "plumbing work was installed improperly" with resulting "continuous and progressive property damage," (xvi) "electrical work was installed improperly" with resulting "continuous and progressive property damage," and (xvii) "drywall in the theater was not installed with proper sound proofing, and fiber optics were not installed" in violation of the Childs' contract with Forestry. *See id.*, ¶ 9.

Arising out of the foredescribed construction defects, the Childs filed an action against Forestry in state court (the underlying action) on or around April 30, 2015. By and through their complaint in that action, as noted above, the Childs allege Forestry's liability in the amount of $3 million for negligent construction, negligence *per se*, and breach of contract, and additionally allege Forestry's liability in the amount of $1 million for fraud in connection with Forestry's representations to them regarding the costs of subcontractors and suppliers, and with the amounts

Page 7 - OPINION AND ORDER

for which Forestry ultimately invoiced them in connection with the costs incurred by the subcontractors and suppliers. *See id.*, prayer for judgment.

As noted above, Developers has undertaken and continues to provide Forestry's defense in the underlying action. *See* Complaint, ¶ 11.

## ANALYSIS

As noted above, Developers seeks this court's declaration that Developers will not owe Forestry any duty of indemnification as to any damages awarded against Forestry in the Childs' favor in the underlying action. It is Forestry's position that Developers cannot be permitted to put Forestry in the position of needing to defend Developers' declaratory judgment action before the underlying action is resolved, because to do so would require it to take positions on the facts that would be adverse to its interests in the underlying action.

In a discussion heavily relied upon by both sets of parties in support of their respective positions, Allan Windt has addressed the subject matter of the parties' dispute at length in a leading treatise on insurance law:

> **A declaratory judgment action solely involving the insurance company's duty to indemnify, as opposed to its duty to defend, cannot, in general, be instituted while the action against the insured is still pending.** Until a judgment against the insured comes into being, the liability of the insurer is contingent and may never materialize; as a result, an adjudication of the insurer's policy defenses would usually not serve a useful purpose.
>
> \* \* \*
>
> There is an exception, however, to the foregoing rule, which exception constitutes [a] reason why an insurance company might file a declaratory judgment action seeking an adjudication as to whether—or in what amount—coverage exists. **The insurer might need such an adjudication in order to assist it in determining how much money to contribute to a settlement on behalf of the insured.** As discussed in §§ 5:05 and 5:10 [hereof], an insurer is, at its peril, obligated to

Page 8 - OPINION AND ORDER

contribute to a settlement an amount representing the reasonable settlement value of the covered claims, and a good faith erroneous belief as to which claims are covered (or how much coverage is available) will not insulate the insurer from liability for failing to make such a contribution. **Accordingly, courts should, with one proviso, allow insurers to pursue declaratory judgment actions** requesting an adjudication concerning the insurer's potential future duty to indemnify **if such an adjudication is truly necessary to allow the insurer properly to fulfill its duty to settle.**

The proviso is that, as discussed in § 8:04 [hereof], **such a declaratory judgment action cannot seek an adjudication of any of the factual matters in dispute in the underlying litigation**. For example, if the insured is being sued, in the alternative, for negligence and intentional wrongdoing, and only the former is covered, the insurer should not be allowed, in a declaratory judgment action, to attempt to prove that the insured is liable and is guilty of intentional wrongdoing. In fact, such an attempt by the insurer should constitute bad faith on its part.

Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies and Insureds,* §8:3 (6th ed. 2013).

It is clear that the Oregon courts agree with Windt that an insurer may not put its insured "in the conflictive position of being required to abandon . . . denial of liability in [an underlying] action in order to [establish coverage in connection with such liability in a separate action]." *North Pac. Ins. Co. v. Wilson's Distrib. Serv.*, 138 Or. App. 166, 175 (1995). The courts of this District have routinely so interpreted the applicable Oregon decisions:

> Two primary doctrines inform the court's analysis on whether to resolve [the question of an insurer]'s duty to indemnify prior to the resolution of the underlying action.
>
> First, "**Oregon courts recognize that when the underlying tort action is still underway, it is appropriate to stay a simultaneous coverage action determining the duty to indemnify if the coverage action places the insured in 'the conflictive position' of being required to abandon its denial of liability in the underlying liability case in order to demonstrate coverage.**" *Charter Oak Fire Ins. Co.* [*v. Interstate Mech., Inc.*], 958 F. Supp. 2d [1188,] 1215 [(D. Or. 2013)] (*citing N. Pac. Ins. Co. v. Wilson's Distributing Serv., Inc.*, 138 Ore. App. 166, 175, 908 P.2d 827 (1995)). Therefore, **Oregon district courts typically**

Page 9 - OPINION AND ORDER

**wait until the underlying litigation is resolved and liability is determined before ruling on an insurer's duty to indemnify.** *Id.* ("Courts typically determine the duty to indemnify only after the underlying liability action has been completed."); *see also Country Mut. Ins. Co. v. Larson*, No. 08-6154-TC, 2010 U.S. Dist. LEXIS 27043, 2010 WL 1039790, at *5 (D. Ore. Feb. 26, 2010); *Evraz Or. Steel Mills, Inc. v. Cont'l Ins. Co.*, No. CV 08-447-JE, 2009 U.S. Dist. LEXIS 133186, 2009 WL 789658, at *11-12 (D. Ore. Mar. 20, 2009); *Travelers Prop. Cas. Co. of Am. v. Martella*, No. CV-04-176-ST, 2004 U.S. Dist. LEXIS 13614, 2004 WL 1375283, at *6 (D. Ore. June 18, 2004).

Second, as both parties address in their briefing, federal courts have discretion whether to exercise declaratory relief jurisdiction. *Charter Oak Fire Ins. Co.*, 958 F. Supp. 2d at 1216. Generally, a federal court may decline jurisdiction if exercising jurisdiction for the purpose of declaratory relief would require needless determination of state law issues, encourage forum shopping, or create duplicative litigation. *Id.* (citing factors in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)).

Here, the underlying lawsuit is unresolved. Discovery is not scheduled to close until October 27, 2014 and a trial date is currently set for January 5, 2015. ... **Despite [the insurer]'s argument that [an] exclusion in [its] Policy automatically precludes any coverage obligation in the underlying lawsuit, this Court is hesitant to make such a determination when the facts of the underlying lawsuit have yet to be established.**

Additionally, this declaratory action puts [the insured] in a conflictive position while the underlying lawsuit remains pending. *North Pac. Ins. Co. v. Wilson's Distrib. Serv.*, 138 Ore. App. 166, 175, 908 P.2d 827 (1995)("What plaintiff has attempted to do here is to litigate, at least in part, the Wilsons' liability to C-CE in the underlying tort action, putting the Wilsons in the conflictive position of being required to abandon their denial of liability in that action in order to come within the exception to the policy exclusion .... An insurer may not put its insured in that position."). For example, to defend itself in this action, [the insured] may have to posit that the facts could show that [it] was negligent ... in some ... manner that falls outside [the insurer]'s ... exclusion. Such a position would conflict with a denial of liability in the underlying lawsuit.

Further, to determine [the insurer]'s duty to indemnify, this Court would have to review the facts in the underlying lawsuit, which essentially creates duplicative litigation and likely would cause this Court to engage in needless determination of state law issues. Thus, consistent with the decisions of this District, I stay this action until the underlying lawsuit is resolved.

Page 10 - OPINION AND ORDER

*Scottsdale Ins. Co. v. Ortiz & Assocs.*, Case No. 3:13-CV-1791-AA, 2014 U.S. Dist. LEXIS 64286, *9-10 (D. Or. May 9, 2014); *see also, e.g., Country Mut. Ins. Co. v. Lund*, Case No. 03:14-CV-594-HZ, 2014 U.S. Dist. LEXIS 95803, 9-10 (D. Or. July 14, 2014) (reaching the same result on the same legal principles); *Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, 958 F. Supp. 2d 1188, 1214-1216 (D. Or. 2013) (same).

I agree with Forestry that to litigate the indemnity question now would put it in the "conflictive position" of arguing that it caused the alleged property damage in a manner that would not invoke any coverage exclusion while simultaneously denying, in the underlying action, either that any property damage exists or, alternatively, that it caused the property damage in any manner at all. As just one logically possible example among many, if its motion were denied Forestry could find itself in the position of arguing in this action that it performed work "incorrectly" on one "particular part" of the project in support of its position that damage to another "particular part" was caused by water intrusion made possible by the incorrectly performed work on the first particular part rather than by incorrectly performed work on the second particular part (such that coverage could potentially be available for damage to the second particular part notwithstanding the Section I(2)(j)(5) and (j)(6) exclusions); another class of logically possible examples would include scenarios in which Forestry's work on one "particular part" of the project caused damage to another part of the project not worked on by Forestry but rather within the purview and control of a different contractor hired directly by the Childs (such that, again, coverage could potentially be available for damage to the part of the project worked on by the other contractor notwithstanding the exclusions). Each of these examples presents a classic "conflictive position" in light of which the requested stay appears appropriate.

Page 11 - OPINION AND ORDER

Developers argues to the contrary that such conflictive positioning cannot occur here because, as the general contractor for the project, the "particular part" of the project on which Forestry performed work is necessarily the entirety of the project, citing in support *Ohio Cas. Ins. Co. v. Ferrell Devs. LLC*, Case No. 3: 10-CV-162-AC, 2011 U.S. Dist. LEXIS 135819 (D. Or. July 27, 2011). However, although *Ferrell* did embrace the proposition that, for purposes of an insurance policy containing exclusion provisions substantially similar to those at issue here, "particular part" could be "broadly construed to include [all] the property affected by the services performed by the insured" rather than to include merely "the specific item the insured is working on at the time of the damage," its holding that, on the facts before it, "particular part" referred to the entire project depended necessarily on the fact that all elements of the project were so interrelated that incorrect performance of work on one particular part had the potential to render the entirety of the project unusable. *See Ferrell,* 2011 U.S. Dist. LEXIS 135819, *25-31. There being no suggestion in the record that that circumstance is applicable here, the reasoning of *Ferrell* is inapposite, and no grounds exist for failing to give the term "particular part" the meaning suggested by its plain language (namely to narrow the scope of the exclusions relying on the term to property specifically damaged by the insured's defective work). *See, e.g., Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010); *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215-217 (5th Cir. 2009); Scott C. Turner, *Insurance Coverage of Contruction Defects*, § 29:2 (2013).

Developers further argues that even if Forestry is correct that litigation of the indemnity question would require "particular part" by "particular part" determination of whether coverage is available for each damaged portion of the Childs' real property, such determination would require

Page 12 - OPINION AND ORDER

only findings as to whether Forestry's work was complete, abandoned, or ongoing at the time the damage occurred, which purportedly would not implicate factual issues that will be developed in connection with the Childs' claims of negligence or of breach of contract. Developers' argument is unpersuasive in that it appears clear that development of facts relating to whether work on any particular part of the project was complete has the potential directly to implicate questions regarding which contractor was responsible for the final condition of the work; moreover, Developers' argument is belied by its own concession, *see* Developers' Opposition at 10 n. 2, that it would be inappropriate to litigate the indemnity question as to particular parts of the project upon which work was substantially complete at the time the damage occurred.

Finally, Developers argues that even if this court is concerned that litigation of the indemnity question could require the development of facts material to the underlying litigation, the court could appropriately carve off the indemnity issue as to, for example, the Childs' fraud claim, or any specific element of the Childs' alleged damages as to which such concerns are not present, and issue a finding regarding Developers' indemnity obligation only as to those carved-out aspects of the coverage question. Naturally, such an approach would have the potential to multiply these proceedings still further, creating the possibility of a partial indemnity action to proceed in parallel with the underlying action and a second partial indemnity action to proceed following resolution of the underlying action. Because such unnecessary multiplication of proceedings is not in the interest of judicial efficiency, I decline to adopt the approach Developers espouses.

Because of the clear potential for Forestry to be put in the "conflictive position" of denying liability in the underlying action while conceding liability for the purpose of establishing

Page 13 - OPINION AND ORDER

eligibility for insurance coverage in this action in the absence of a stay of these proceedings, Forestry's motion to stay these proceedings is granted.

## CONCLUSION

For the reasons set forth above, Forestry's motion (#11) to stay these proceedings is granted, and these proceedings are stayed pending resolution of the Childs' underlying action against Forestry.

Dated this 7th day of April, 2016.

/s/ Paul Papak

Honorable Paul Papak
United States Magistrate Judge

Page 14 - OPINION AND ORDER